UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEREMY R. STATER,
    Plaintiff,

    v.                                             Case No. 17-C-679

DR. JOEL RIGUER,
    Defendant.

## DECISION AND ORDER

Plaintiff Jeremy R. Stater, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983 alleging that several defendants had violated his constitutional rights. I allowed him proceed on an Eighth Amendment deliberate indifference claim against defendant Dr. Joel Riguer regarding his purported failure to timely respond to plaintiff's requests to restart his depression and anxiety medications. Before me now are the parties' cross-motions for summary judgment, and defendant's motion to seal Exhibit 1 to his declaration.

### I. MOTION TO SEAL

Defendant has filed a motion to seal the plaintiff's medical records that he uses to support his motion for summary judgment. He believes plaintiff does not desire for some, if not all, of the information contained in the documents to be made public. Defendant bases this belief on the fact that plaintiff's motion for summary judgment includes an attachment of redacted versions of his medical records. Defendant further states that plaintiff is "entitled to some degree of privacy" regarding his medical records and that "there is a possibility of plaintiff's medical records ending up in other prisoners'

possession" if they were to remain publicly filed. Docket no. 35, ¶ 9. Thus, defendant asserts the document should be sealed for litigation participants only.

The Seventh Circuit noted in *Union Oil Co. of Calif. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000), that

> [p]eople who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property … and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible.

(internal citations omitted.) So before sealing any part of the record, I must make a determination of good cause. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999); Gen. L.R. 79(d)(3) (E.D. Wis.).

In recognition of both parties' concerns regarding plaintiff's medical information being made available in a public forum, I find that good cause does exists to place those records under seal. However, because plaintiff has placed his medical condition at issue in this lawsuit, this good cause does not extend to those portions of plaintiff's medical records that are relevant to his claims. Thus, I will grant defendant's motion to seal Exhibit 1 of his declaration. However, the information from the medical records that have been cited by the parties or the court in other documents or that will be cited by the parties or the court in other documents shall remain available to the public.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. Background[1]

At all times relevant, plaintiff was incarcerated at the Waupun Correctional Institution (WCI) of the Wisconsin Department of Corrections. Docket No. 38, ¶ 1. Defendant was a contract psychiatrist providing services to the Wisconsin Department of Corrections, not a State of Wisconsin employee. *Id.*, ¶¶ 2-3; Docket No. 29, ¶ 4.

From August 1, 2016 through October 16, 2016, defendant typically worked at WCI on Mondays and Tuesdays; and from October 17, 2016 through March 5, 2017, he typically worked there on Mondays and Fridays. Docket No. 38, ¶ 6; Docket No. 31, ¶ 6. Each day he worked at WCI, health services unit (HSU) staff would provide him with a list of patients scheduled to see him that day. Docket No 38, ¶ 7. Defendant would report back to the HSU clerk the patients whom he saw. *Id.* On either day, he would see anywhere from 12 to 16 scheduled patients. *Id.* Defendant would deviate from that list only if he was informed by the HSU manager that there was an emergency at the prison that required his attention. *Id.*, ¶ 8. If an emergency occurred, HSU would make other arrangements for the scheduled patients, including cancellation and rescheduling. *Id.* Thus, HSU handled a patient's scheduling and general contact with defendant. *Id.*, ¶ 12.

Further, when inmates submitted health-services requests (HSR), it would be at the discretion of the HSU to share the information contained on those requests with

---

[1] The facts are taken from plaintiff's facts outlined in his motion for summary judgment (Docket No. 35) and defendant's proposed findings of fact (Docket. No. 38). I have also considered and included facts set forth in the declaration of Joel Riguer and its attachments (Docket Nos. 31 and 32).

defendant. If shared, defendant would sign his name on the HSR thus indicating that he had seen it. *Id.*, ¶ 10.

Prior to his first evaluation of plaintiff on May 18, 2016, defendant reviewed plaintiff's medical file and learned that plaintiff had been treated for depression and anxiety. *Id.*, ¶¶ 13-14; Docket No. 29, ¶ 3. He also learned that plaintiff seemed to have a habit of discontinuing prescribed medication on his own and refusing clinical sessions despite his having requested the session. Docket No. 38, ¶¶ 15, 17.

On May 18 defendant conducted a full psychiatric evaluation of plaintiff. *Id.*, ¶ 18. He determined that plaintiff had various disorders and continued plaintiff on the following medications: Venlafaxine XR, two capsules in the morning and one capsule at noon time, doxepin at bedtime, and hydroxyzine, one capsule three times a day (morning, noon, and night). *Id.*, ¶¶ 19-20. He also started plaintiff on Lithium Carbonate two times a day, morning and night. *Id.*

On September 16, 2016, while plaintiff was being housed in the restrictive housing unit, an HSU nurse talked to him about medication non-compliance. *Id.*, ¶ 21. She had prepared a "Refusal of Recommended Health Care" form and wrote that plaintiff had refused to take his prescribed hydroxyzine, lithium carbonate, venlafaxine, doxepin, and buspirone. *Id.*, ¶ 22. Where the form asks the inmate to describe his reasons for refusing recommended health care, plaintiff wrote, "discontinue all meds for 6 a.m. times. All other(s) are sufficient for inmate, although taken at random, it is still regular." *Id.*, ¶ 22; Docket No. 29, ¶ 5.

On September 26, 2016, after receiving the refusal form, defendant entered an order that stated "discontinue the following meds per patient request: (l) Buspirone

4

60mg/day; (2) Hydroxyzine 150 mg/day; (3) Lithium Carbonate 1200 mg/day; (4) Venlafaxine XR150 mg/day." *Id.*, ¶¶ 24-25. Defendant also initialed that he had reviewed the refusal form. *Id.*, ¶ 28. Plaintiff's medications were thereafter discontinued. Docket No. 29, ¶ 6.

On September 28, 2016, October 7, 2016, and October 12, 2016, plaintiff submitted HSR's asking who discontinued all of his medications, asserting that he only requested that the morning medications be discontinued, and seeking to have his medications restarted. *Id.*, ¶ 7, EX 2 at E1-E2, E4; Docket No. 38, ¶ 31. He submitted a similar interview request on October 11, 2016. Docket No. 29, EX 2 at E3; Docket No. 38, ¶ 32. On October 11 and 12, 2016, HSU responded to plaintiff that it was defendant that had discontinued plaintiff's medication per plaintiff's request and that the matter had been referred back to him for possible restart of his medications. Docket No. 29, ¶ 9, EX 2 at E3-E4; Docket No. 38, ¶ 32. Plaintiff submitted another interview request on October 13, 2016, reiterating the fact that he only wanted his six a.m. medications discontinued. Docket No. 29, EX 2 at E5. HSU responded that defendant "has requested an appointment within two weeks to discuss." Docket No. 29, EX 2 at E5; Docket No. 38, ¶ 31.

On October 23, 2016, plaintiff prepared another HSR asking when he was scheduled to be seen by defendant. Docket No. 38, ¶ 34. HSU responded that plaintiff "was on the list to be seen." On October 24, 2016, defendant entered an order stating "schedule patient in two weeks or PRN (as necessary) for psychiatry to address his medication issues". *Id.*,

¶¶ 34, 36.

Plaintiff was then scheduled to be seen by defendant on October 31, 2018. *Id.*, ¶ 38. However, because plaintiff had also been released from segregation that same day, "[the] institution did not forward [his] pass to allow [him] to meet with [defendant]." Docket No. 31, ¶ 40. Plaintiff's absence was noted as a refusal. Docket No. 38, ¶ 38.

On November 6 and 17, 2016, plaintiff wrote HSR's noting his need for his medication, the physical complications he experienced since being off of his medication, and that his medications had been stopped without his consent. *Id.*, ¶¶ 39, 41. Plaintiff asserts that on November 17, 2016, he experienced an anxiety attack purportedly due to his not being on his medications. Docket No. 29, ¶ 10. HSU deferred the matter to the psychiatrist and responded that plaintiff was on the list. *Id.*, ¶¶ 39, 41.

Plaintiff also wrote psychological services requests (PSR) to the psychological services unit discussing his anxiety issues and depression issues on November 20, 2016. Docket No. 38, ¶ 40.

On November 22, 2016, he wrote a PSR seeking to meet with someone to "discuss further options for [his] ongoing issues." *Id.*, ¶ 42. Plaintiff met with a psychologist on December 2, 2016, and discussed with him his concerns about his medications being discontinued. *Id.*, ¶ 43; Docket No. 29, ¶ 11. The psychiatrist noted the concerns and also noted that the HSU was informed of this recent medication change and plaintiff's need for psychiatric re-evaluation. Docket No. 38, ¶ 43.

On December 2, 2016, plaintiff engaged in self-harm by inflicting a laceration to the mid-right posterior of his upper arm. *Id.*, ¶ 44; Docket No. 29, ¶ 11. The wound was tended to by an HSU nurse, and plaintiff was seen by a psychologist the following day. Docket No. 38, ¶ 44. He reported that he was okay and did not need PSU. *Id.* When

6

plaintiff met with another psychologist on December 6, 2016, regarding the incident, he stated that news of some relatives passing and others' poor health "triggered a desire to feel something other than depression, so he cut the vein in his inner arm." *Id.*

Plaintiff sent an HSR slip on December 11, 2016, noting that he was in restricted housing and had not received his Doxepin. *Id.*, ¶ 45. The HSU responded on December 17, 2016, that the "card was misplaced during your movements throughout the facility. New med ordered from Pharmacy". *Id.*

On December 12, 2016, plaintiff was seen by another psychologist and reported to her that "he had been taken off all of his psychotropic medications, but that he only became upset and cussed at staff when he did not receive his Kosher meal." *Id.*, ¶ 46.

After requesting information about when his various psychologists had attempted to contact HSU and to request that plaintiff be scheduled to meet with defendant, plaintiff was informed that he was scheduled to see defendant on December 19th. *Id.*, ¶¶ 46-47. However, plaintiff wrote another HSR slip on December 16, 2016, stating "stop denying medical treatment! Restart!" *Id.*, ¶ 48. The HSU responded on December 17, 2016 "seeing Dr. Rigueur Monday, December 19th." *Id.*

On December 19, 2016, defendant saw plaintiff and performed a psychiatric evaluation. *Id.*, ¶ 49. During that meeting, plaintiff noted that he was angry because someone discontinued his medications and that he had submitted several HSRs indicating that his medication had been discontinued against his will. *Id.* He also stated that his note on the "Refusal of Recommended Health Care" form was seeking an adjustment and not discontinuation of his medication and "that somebody did not read his blue slip well." *Id.* In response to this meeting, defendant wrote an order stating "please

restart these medications at patient's request: (1) Venlafbxine; (2) Buspirone; and also to perform blood work necessary before ordering Lithium Carbonate." *Id.*

On December 21, 2016, plaintiff again engaged in self-harm by inflicting inch-long cuts on both of his arms. *Id.*, ¶ 50; Docket No. 29, ¶ 11. He was seen and treated by the HSU, and he was seen by a psychologist that same day. Docket No 38, ¶ 50. He told the psychologist that "he had wanted to cut his vein and do damage and was upset that he was not able to accomplish this." *Id.*

On December 26, 2016, plaintiff submitted an HSR slip requesting his medications and noting that he had met with defendant regarding the restart of his medications and that he still had not received his Doxepin since going to the restricted unit. *Id.*, ¶ 51. The HSU responded on December 27, 2016, "Doxepin sent 12-26-16. Your new medication is not here at Pharmacy yet. May take up to ten days especially over holiday." *Id.*

In the interim, on December 29 and 30, 2016 and January 4, 2017, plaintiff was seen by two different psychologists. *Id.*, ¶ 52.

On January 4, 2017, by phone, defendant ordered for plaintiff's records to reflect a change from Venlafaxine to Venlafaxine XR. *Id.*, ¶ 53.

The following day, plaintiff was seen by another psychologist who noted that plaintiff's self-harming behavior was becoming more persistent and severe as evidenced by plaintiff's then recent failed suicide attempt of hanging. *Id.*, ¶ 54; Docket No. 29, ¶ 12.

Plaintiff submitted an HSR slip on January 5, 2017, again stating that he had met with defendant on December 19 regarding his medication restart but that he had not been receiving the medication. Docket No. 38, ¶ 55. The HSU responded the following day that

8

"Buspirone issued. Venlafaxine order needs review and clarification by [defendant] before Pharmacy can provide medication." *Id.*

Plaintiff submitted another HSR slip on January 11, 2017, again asserting that he had met with defendant on December 19 and that defendant had restarted his depression and anxiety medications that included "Lithium 300 mg, Venlafaxine 75, Hydroxyzine 25 mg, and Buspirone 15 mg." *Id.*, ¶ 56. Plaintiff again asked where his medications were. *Id.* The HSU responded, "Hydroxyzine and Lithium not restarted and Venlafaxine order[] just clarified 1-4-17. Med ordered. Will give when available. Buspirone sent 12-31-16." *Id.*

On January 19, 2017, plaintiff submitted an interview/information request seeking to have all of his medications restarted. *Id.*, ¶ 57. The request was referred to the HSU manager who responded to plaintiff that he had a psychiatrist appointment scheduled for the following day. *Id.*

Defendant, however, met with plaintiff on February 3, 2017, and performed another psychiatric evaluation of plaintiff. *Id.*, ¶ 58. Defendant noted in his psychiatric report for plaintiff that he had ordered blood work on December 19, 2016; however, on February 3, 2017, the blood work results were not available. *Id.* He found that the blood, which had been drawn on January 5, 2017, had not been tested for the restart of plaintiff's Lithium so it would have to be redrawn that day. *Id.*

Also during this meeting, plaintiff informed defendant that he had done well on Lithium along with Olanzapine. *Id.*, ¶ 59. Thus, in conjunction with the medications defendant had already started plaintiff on—Buspirone, Venlafaxine XR and Doxepin— and his restart of plaintiff on Lithium pending his blood work, defendant agreed to order plaintiff Olanzapine after it was approved by the DOC Psychiatry Director. *Id.* Approval

9

was required for Olanzapine due to the drug's misuse and illicit purposes within the prison setting. *Id.*

On that same day, defendant entered an order for Olanzapine l0 mg by mouth at bedtime for six months and to return to clinic February 10, 2017, and for Lithium to restart pending blood work. *Id.*, ¶ 60. Defendant also prepared the form seeking approval for the Olanzapine. *Id.* The medication was approved on February 7, 2017. *Id.*

On February 7, 2017, plaintiff again engaged in self-harm by wounding his right arm with a razor blade. *Id.*, ¶ 61. He was seen and treated by the HSU. *Id.* He also spoke with a psychologist the next day and told him "that he had been upset and that he engaged in self-harm without thinking." *Id.*, ¶ 62. Plaintiff denied suicidal ideation, but stated he had to work on not getting so upset so quickly. *Id.*

On February 9, 2017, plaintiff was seen by another psychologist to whom he reported that he had cut himself, that he wanted to restart his psychotropic medications, and that he was scheduled to see defendant the next day. *Id.*, ¶ 63.

Plaintiff also saw another psychologist on February 10, 2017, and again reported that "he did not self-harm with the intent to attempt suicide." *Id.*, ¶ 64.

When plaintiff met with defendant on February 10, 2017, defendant again conducted a psychiatric evaluation of plaintiff and plaintiff denied current or repeated suicidal and homicidal ideation intents or plans. *Id.*, ¶ 65. He also found that plaintiff's bloodwork was within normal limits so he restarted plaintiff on Lithium. *Id.* Thus, defendant's treatment plan for plaintiff at that time was for plaintiff to continue the Buspirone, Venlafaxine, Doxepin, and Olanzapine and to start Lithium Carbonate. *Id.* On February 10, 2017, defendant entered an order to add Lithium to his medications. *Id.*

Thereafter, from February 14, 2017 to June 27, 2017, plaintiff submitted several HSR's regarding adjustments to his medications because they were not working and sought receipt of the medications after they were adjusted. Some of the medication was still awaiting approval from the DOC Psychiatry Director. *Id.*, ¶¶ 66-91. After defendant's last evaluation of plaintiff on June 27, 2017, and noted treatment plan of Buspirone, Bupropion XL, Lithium Carbonate, Doxepin, Olanzapine with a follow-up interval of eight weeks or sooner if needed, plaintiff had no further interactions with defendant. *Id.*, ¶¶ 91-92.

### B. Summary Judgement Standard

A party is entitled to summary judgment if he shows that there is no genuine dispute as to any material fact, and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in his favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the purpose of deciding this motion, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008). I do not weigh the evidence presented or determine credibility of witnesses. Such tasks are left to the trier of fact. *See Berry v. Chicago Transit Auth.*, 618 F. 3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that her case is convincing, he need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## C. Deliberate Indifference

Plaintiff contends that summary judgment should be granted in his favor because after he requested that only his 6 a.m. medication be stopped defendant mistakenly discontinued all of his medications in deliberate indifference to his serious medical needs. He further asserts that after his medication was discontinued he showed mental and emotional anguish for months to which the defendant showed extreme deliberate indifference.

Defendant contends that he is entitled to summary judgment because he was not deliberately indifferent to plaintiff's serious medical needs. Specifically, he asserts that his order to discontinue plaintiff's medication was at most negligence, and that he was not at fault for any delay in restarting plaintiff's medication.

Deliberate indifference has both an objective and a subjective component: the inmate must have an objectively serious medical condition, and the defendants must be subjectively aware of, and consciously disregard that inmate's medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Edwards v. Snyder*, 4778 F.3d 827, 830-31 (7th Cir. 2007); *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005). The record shows that plaintiff suffered from various diagnosed mental disorders and was being treated with medication. Thus, this element is not in dispute here.

The parties focus instead on the second element: that defendant must have displayed deliberate indifference to that medical condition. When a claim is against a medical professional, "[a] prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'" *Howard v. Bartow*, 131 F. Supp. 3d 789, 799 (E.D. Wis. 2015) (quoting *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir.2005)). Thus, the court can find that the professional was "deliberately indifferent only if his treatment decisions were 'such a substantial departure from accepted professional judgment, practice, or standards ... as to demonstrate' that they were not relying 'on a professional judgment.'" *Howard v. Bartow*, 131 F. Supp. 3d 789, 799 (E.D. Wis. 2015) (quoting *Youngberg v. Romeo,* 457 U.S. 307, 323 (1982) (internal quotation marks and citation omitted)).

After reviewing the parties' factual allegations and the plaintiff's medical records attached to the parties' respective motions for summary judgment, I find that no reasonable jury could conclude that defendant acted with deliberate indifference toward plaintiff's serious medical condition.

Plaintiff concedes that defendant's act of discontinuing his medication was a mistake, *i.e.*, negligence. Neither medical malpractice nor negligence violates the Eighth Amendment. *Farmer*, 511 U.S. at 836–39.

Deliberate indifference can also include the intentional delay in access to medical care. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). In particular, such "a delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Id*. Plaintiff asserts that defendant showed deliberate indifference by taking over three

13

months to restart plaintiff on his medication. Additionally, during that time, the record reflects that plaintiff expressed his desire to restart his medication a plethora of times through HSR's, PSR's, interview requests, and directly to his various attending psychologists. One psychologist even noted that plaintiff should be referred to defendant to discuss restarting his medication. The record also reflects that plaintiff engaged in several suicide attempts and life threatening actions purportedly due to his depression which his medication had been prescribed to treat.

However, although plaintiff seems to have indeed suffered all while haven taken what would seem to be the proper steps in restarting his medication, the record does not indicate that defendant was responsible for that delay. Instead, plaintiff suffered a series of unfortunate circumstances none of which defendant caused. After plaintiff first became aware that his medication had been discontinued, he submitted three HSRs—one on September 28, 2016, one on October 5, 2016, and one on October 12, 2016—seeking to find out who discontinued his medication and why. The HSU responded to plaintiff—about a week after his first request—that his medication had been discontinued by defendant in accordance with plaintiff's request. On October 13, 2016, plaintiff submitted another request stating that he did not ask for all of his medication to be discontinued, only that which he was receiving at 6 a.m. The HSU then responded to plaintiff that defendant had at that time requested an appointment with plaintiff within two weeks to discuss. The record shows, however, that plaintiff failed to attend the scheduled appointment. Although both parties agree that his missing that meeting was not the plaintiff's fault, it was also not the defendant's fault, nor was defendant made aware of that unfortunate occurrence at that time.

When plaintiff wrote HSR's on November 7 and 17, 2016, he noted only that he still needed his medication. So, he was put back on the general list to meet with defendant—a list that is created for defendant by HSU. Thereafter, plaintiff submitted several other HSR slips regarding his medication and spoke with various psychologists about his mental health and need for his medication. Yet, defendant was not made aware of any of those HSRs or those conversations plaintiff had had with the various psychologists prior to plaintiff's meeting with defendant on December 19th.

Then at the December meeting, defendant evaluated plaintiff and acted. He ordered for plaintiff to restart two of his prescribed medications and for blood work to be performed for plaintiff to restart a third. Defendant thereafter had no control over the delay in getting plaintiff's medications to him nor did he have control over HSU failing to properly conduct the bloodwork for plaintiff to be restarted on the third medication. When he finally learned that plaintiff had not had the bloodwork done, defendant ordered for it to be conducted and plaintiff was subsequently allowed to be restarted on the medication within days.

Plaintiff asserts that he should have been restarted on all his previously prescribed medications at that time. "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference." *Grund v. Murphy*, No. 17-3025, 2018 WL 2747543, at *2 (7th Cir. June 7, 2018) (citing *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).). Defendant used his professional judgment in restarting plaintiff on the medication he believed would effectively combat plaintiff's mental disorders. While I greatly sympathize with plaintiff because it seems that he was

the ill-fated recipient of a set of unfortunate occurrences, no reasonable jury could find that defendant's actions were in deliberate indifference to his medical condition.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for summary judgment (ECF No. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment (ECF No. 36) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion to seal (ECF No. 34) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's supplemental motion for summary judgment (ECF No. 42) is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (ECF No. 40) is **DENIED** for the same reasons stated in my prior orders denying his requests for recruited counsel (ECF Nos. 8 & 22).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil

Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 20th day of September, 2018.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge
